IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TWIN-MED LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CV 3377 |
| | ) | |
| v. | ) | Judge James B. Zagel |
| | ) | |
| 7315 N. ST. LOUIS, LLC and | ) | Magistrate Judge Arlander Keys |
| GREYSTONE ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants, 7315 N. St. Louis, LLC ("St. Louis LLC") and Greystone Associates, Inc. ("Greystone") (collectively, "Defendants"), move this Court to dismiss Count III of the Plaintiff's Complaint and to dismiss Greystone as a party defendant as to all claims. The allegations in Plaintiff's Complaint are accepted as true only for purposes of this motion. In further support to this motion, Defendants state as follows:

## PRELIMINARY STATEMENT

Plaintiff, Twin Med, Inc. ("Twin Med"), entered into an agreement with St. Louis LLC to lease space at an industrial building in Skokie, Illinois. Twin Med remained on the premises after the lease agreement and all subsequent amendments expired, though it promised to vacate the premises by the end of February, 2008. Just days before Twin Med's scheduled departure date, a contractor for St. Louis LLC performed work on the premises. Plaintiff alleges that the work performed by landlord, three days before Twin Med's scheduled departure date, damaged its property and caused it economic damages (i.e. loss of sales, profits, and goodwill), which is

the basis of the dispute at hand.  Twin Med filed a complaint against  (i)  St. Louis LLC, as Lessor, and (ii) Greystone, as agent, alleging:  Count I – Negligence; Count II - Breach of Lease; and Count III- Breach of Covenant of Quiet Enjoyment.  (A copy of the Complaint is attached hereto as Exhibit A.  Citations to Plaintiff's Complaint will be identified as "Compl. __.")

Twin Med cannot sustain a claim for Complaint Count III - Breach of Covenant of Quiet Enjoyment (Compl. 26-30) for the reason that a claim for breach of the covenant of quiet enjoyment requires actual or constructive eviction, which has not been pled.  There are no allegations that Twin Med had to vacate the premises because of conduct engaged in by Defendants, an element essential to proving eviction.  Therefore, Complaint Count III should be dismissed with prejudice.

Twin Med has no legal claim against Greystone.  As is set forth in the lease agreement, and as noted in the Complaint, Twin Med was aware that Greystone operated as an agent for St. Louis LLC.  A disclosed agent is not liable for the alleged wrongful acts of its principal. Greystone should be dismissed, with prejudice, from these proceedings.

### FACTS

On October 21, 2003 St. Louis LLC and Twin-Med entered into a lease (the "Lease") for the premises located at 7315 St. Louis, Unit 5, Skokie, Illinois.  For the purposes of this Motion, the Lease will be treated as part of the Complaint.[1]  "Any document attached to the pleading will be treated as part of the pleading if the pleading specifically incorporates it by reference.   To incorporate a document as an exhibit, the pleading must refer to a specifically identified instrument and must clearly manifest an intent to incorporate it as a part of that pleading." *Garrison v. Choh*, 208 Ill. App. 3d 48, 53, 719 N.E.2d 237, 241 (1999).

---

[1] Further, this Motion incorporates the defined terms as set forth in the Lease.

2

The Lease attached to the Complaint, however, is misleading because it is incomplete. It does not include a first letter addenda (dated November 20, 2006), the First Lease Amendment (executed on December 11, 2207), and a second letter addenda (dated January 21, 2008) (attached as Exhibit B, Exhibit C, and Exhibit D respectively), each of which modifies the terms and conditions of the original Lease. Though the Lease addendums and amendment cited in this Motion (but not in the Complaint) are not required as a basis for support of this Motion, they are essential to the Court's understanding of the legal relationship of the parties (namely the fact that the alleged damages occurred just days before Twin Med's scheduled departure from the premises) and have been provided for the convenience of the Court.[2]

The Lease was for a term commencing November 1, 2003 and expiring on November 30, 2006 (Lease ¶ 23(A)). The Lease was signed by Twin Med and by "Greystone Associates, Inc. *as agent for* Lessor (St. Louis LLC)" (Lease, p.1) (emphasis added). Lease Rider A, Paragraph 23(C) states that with ninety days written notice, the Lessor (Twin Med) possessed a one time option to renew the Lease at rental rates set forth in the Lease. Lease Rider A, Paragraph 34(H) provided that in the event of a holdover, the Lessor (St. Louis LLC), upon written notice to the Lessee (Twin Med), could declare that the Lease continue for one year at 150% of the then Rental. Twin Med requested an extension of the Lease. On November 20, 2006, Greystone sent a letter to Twin Med indicating that "ownership is amenable to extending" the Lease for a period of one year, expiring on November 30, 2007. (*See* Exhibit B.)

On December 11, 2007, Twin Med and St. Louis LLC executed the First Lease Amendment (the "First Amendment"). (*See* Exhibit C.) The First Amendment further extended

---

[2] Even after counsel for Defendants pointed out this inconsistency, Plaintiff's counsel refused to amend the Complaint to include a complete copy of the Lease. If Plaintiff fails to provide a true and complete copy of the very

the term of the Lease for a period of two months, commencing on December 1, 2007 and expiring on January 31, 2008. The First Amendment modified the Holdover provision of the Lease such that if Twin Med held over the Premises past January 31, 2008, Twin Med would be deemed a month-to-month tenant.

January 21, 2008, Twin Med exercised the Holdover option, thereby becoming a month-to-month tenant.[3] Twin Med stated that it would assume its hold-over tenancy for two months, and that it would move out of the Premises by the end of February, 2008.[4]

Beginning on or around February 11, 2008, and for approximately one week thereafter, St. Louis LLC performed construction in the warehouse of the building in which the Premises is located. (Compl. 2.)

On February 29, 2008, Twin Med vacated the Premises in accordance with its prior agreement to do so communicated on January 21, 2008. (*See* Exhibit D.)

## ARGUMENT

### I.    Plaintiff's Is Not Entitled to Relief for Breach of Covenant of Quiet Enjoyment Because No Facts Have Been Plead That Would Support Such Claim.

Under Illinois law, a covenant of quiet enjoyment is implied in every lease agreement. *Blue Cross Assoc. v. 666 North Lake Shore Drive Assocs.*, 100 Ill. App. 3d 647, 652, 427 N.E.2d 270, 273 (1981). An implied covenant of quiet enjoyment includes, "absent a lease clause to the contrary, the right to be free of the lessor's intentional interference with full enjoyment and use of the leased premises." *Infinity Broadcasting Corp. of Illinois v. The Prudential Ins. Co. of America*, 1987 WL 6624 at *5 (N.D. Ill. Feb. 9, 1987).

---

contract that is the basis of its claims against Defendants, the Plaintiff has failed to state a claim upon which relief could be granted.
[3] "Twin Med will also begin exercising our option to continue occupying ... (the premises) through the month of February. Please consider this written notice as per our Month to Month Tenancy Agreement." (*See* Exhibit D.)

4

The claim of breach of the covenant of quiet enjoyment **requires actual or constructive eviction**. *Shaker and Assocs., Inc. v. Med. Technologies Group, Ltd.*, 315 Ill. App. 3d 126, 134, 733 N.E.2d 865, 872 (2000) (*emphasis added*).  Constructive eviction is something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises. *Id.*  A constructive eviction requires that the landlord has done something of a grave and permanent character with the intention of depriving the tenant of enjoyment of the premises. *Advertising Checking Bureau, Inc. v. Canal-Randolph Assocs.*, 101 Ill. App. 3d 140, 146, 427 N.E.2d 1039, 1044 (1981).  There can be no constructive eviction without the vacating of the premises. *Shaker* 315 Ill. App. 3d at 135. *See also Reade v. Reva Holding Corp.*, 818 N.Y.S.2d 9 (2006) (Commercial tenant never abandoned demised premises, and, thus, absent a constructive eviction, landlord did not breach the covenant of quiet enjoyment when tenant's business allegedly suffered an interruption and property damage as the result of the work performed in an unworkmanlike manner during construction project, by contractor hired by landlord to add a second story to the building.)  Further, a tenant who does not vacate within a reasonable time is considered to have waived the landlord's breach. *Id.*

Plaintiff has not alleged constructive eviction or that it vacated the premises because of anything the Lessor did.  Rather, the Premise were vacated because the Lease term had ended. Therefore, the claim set forth in Count III of the Complaint for Breach of the Covenant of Quiet Enjoyment fails.  No relief can be granted in favor of the Plaintiff, regardless of any additional facts that may be uncovered in discovery.  Because Plaintiff failed to state a claim for which relief can be granted, this Court should dismiss Count II of the Complaint, with prejudice.

---

[4] (*See* Exhibit D.)

Although not a basis for dismissal, the damages alleged in Count III of the Complaint have also been sought under Count I of the Complaint (Breach of Contract).

## II.    Greystone, a Disclosed Agent, is Not a Proper Defendant in this Litigation Because Greystone is Not Subject to Liability Under the Contract.

"It has been long settled in Illinois that, when an agent entering into a contract with another discloses both his agency status and the name of his principal, or when the party dealing with the agent knows that the agent is acting for his principal in making a contract, the agent is not liable on the contract unless he agrees to become personally liable." *Storm & Assocs., Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 700 N.E.2d 202 (1998) *citing Chicago Title & Trust Co. v. De Lasaux*, 336 Ill. 522, 526, 168 N.E. 640 (1929).

Twin Med knew Greystone was acting for its principal, St. Louis LLC, when it entered into the Lease. The factual allegations of the Complaint establish Twin Med's knowledge. The Complaint states that Twin Med entered into the Lease with St. Louis LLC and Greystone, as agent of St. Louis LLC. (Compl. 6.) (*See also* Compl. ¶ 3, "Defendant, Greystone Associates, Inc. … acts as managing agent for St. Louis LLC.") The Lease, itself, supports this argument. The first page of the Lease clearly states that the Lessor is "GREYSTONE ASSOCIATES, INC. AS AGENT FOR LESSOR," (*emphasis in original*). The signature block similarly identifies Greystone as "Agent." (*See* Rider A to Lease, p. 3.) Finally, there is nothing in the Lease that would indicate an agreement, on the part of Greystone, to assume any type of liability. Because Twin Med knew when entering into the Lease that Greystone was the agent of St. Louis LLC's, and because Greystone did not agree to assume any liability, Greystone cannot be liable under the Lease. Because Greystone cannot be liable under the Lease, any claim for relief against Greystone will fail. Accordingly, this Court should dismiss Greystone as a party defendant as to all claims, with prejudice.

6

## CONCLUSION

For the reasons set forth above, Defendants, 7315 N. St. Louis, LLC and Greystone Associates, Inc., respectfully request that this Court dismiss, with prejudice, Count III of Plaintiff's Complaint and further dismiss, with prejudice, Greystone Associates, Inc. as a party defendant on all claims, pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**7315 N. ST. LOUIS, LLC, and**
**GREYSTONE ASSOCIATES, INC.,**

By:       **/s/ Gary I. Blackman**
          **One of Their Attorneys**

Gary Blackman
Amy A. Pines
Levenfeld Pearlstein, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
Telephone: (312) 346-8380
Facsimile: (312) 346-8434
Firm I.D. No.: 36518

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| TWIN-MED LLC | ) | |
| Plaintiff, | ) | |
| | ) | No. _____ |
| v. | ) | |
| | ) | |
| 7315 N. ST. LOUIS, LLC and | ) | |
| GREYSTONE ASSOCIATES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

2008L005216
CALENDAR/ROOM W
TIME 00:00
Breach of Contract

## COMPLAINT

Plaintiff Twin-Med LLC, by and through its attorneys, MUCH SHELIST DENENBERG

AMENT & RUBENSTEIN, complains as follows against 7315 N. St. Louis, LLC and Greystone

Associates, Inc.:

### The Parties, Jurisdiction and Venue

1.      Plaintiff, Twin-Med LLC ("Twin-Med") is a Delaware Limited Liability

Company, and it specializes in the distribution of medical and nursing supplies.

2.      Defendant, 7315 N. St. Louis, LLC ("St. Louis LLC") is an Illinois limited

liability company.

3.      Defendant, Greystone Associates, Inc. ("Greystone") is an Illinois corporation,

and acts as managing agent for St. Louis LLC.  On information and belief, Greystone and St.

Louis LLC share common ownership and control.

4.      Jurisdiction is proper in this Court because St. Louis LLC and Greystone

(collectively "defendants") are residents of Illinois and/or because this cause of actions arose

out of transactions that occurred in Illinois.

5.      Venue is proper in this Court pursuant to 735 ILCS § 5/2-101, *et seq.*

### General Facts

6.      On October 21, 2003 Twin-Med, Inc. entered into an agreement ("Lease") with St. Louis LLC and Greystone as St. Louis LLC's agent and/or co-lessor, to lease an industrial building, consisting of a warehouse and office space, at 7305 St. Louis, Skokie, Illinois ("Building"). A copy of the Lease is attached as Exhibit A. Twin-Med, Inc. subsequently assigned its interests and rights in the Lease to Twin-Med LLC.

7.      The Lease was extended from time to time, and Twin-Med remained a tenant at the Building, and the Lease remained in full force and effect at all times relevant hereto.

8.      During its tenancy, Twin-Med stored various medical and nursing supplies in the warehouse of the Building. A substantial portion of Twin-Med's inventory consisted of supplies for acute care hospitals. Its inventory required a sterile-like environment to eliminate the risk of contamination.

9.      Beginning on or around February 11, 2008 and for approximately one week thereafter, defendants performed construction in the warehouse of the Building.

10.     Twin-Med was not notified of the work to be performed in the warehouse, and was not given an opportunity to take measures to protect its inventory from any resulting damage from the construction.

11.     Defendants did not take any precautions to protect Twin-Med's inventory during the work being done by defendants.

12.     The work performed by defendants included, but was not limited to, the demolition of a cement wall in the Building's warehouse. This caused dirt and dust to cover the warehouse.

2

13.    Due to defendants' construction activities, a substantial amount of Twin-Med's inventory was contaminated by dust and dirt, and was thereafter unusable. Twin-Med was unable to sell the contaminated inventory.

14.    During the construction, a large portion of the warehouse was inaccessible to Twin-Med due to construction equipment obstructing aisle ways. Twin-Med was unable to fill customer orders as a result of these obstructions.

15.    Due to piles of bricks from the construction and a garbage dumpster, the loading dock of the warehouse also was substantially limited in its use. Twin-Med was unable to ship customer orders as a result of this obstruction.

16.    During and following defendants' construction, Twin-Med suffered a loss of inventory, loss of sales and loss of goodwill of its customers, as it was unable to use the contaminated inventory to fulfill customer orders, and it was also unable to conduct its affairs in the usual and ordinary manner given the obstructions caused by defendants' work.

## COUNT I
### (Negligence)

17.    Twin-Med incorporates paragraphs 1 – 16 as if fully set forth herein.

18.    At all times relevant herein, defendants had a duty to exercise the requisite degree of care to perform work in the Building in a reasonable and workmanlike manner.

19.    Notwithstanding the duty of defendants, they were guilty of one or more of the following careless and negligent acts and/or omissions:

a.  failing to notify Twin-Med of construction work to be performed in the Building;

b.  failing to allow Twin-Med the opportunity to protect its inventory from harm and/or contamination;

3

    c.   failing to take appropriate measures to protect the inventory present at the Building;

    d.   performing work that resulted in large amounts of dirt and dust to contaminate Twin-Med's inventory storage area without adequate protection or safeguards;

    e.   performing the work in such a manner as to interfere with Twin-Med's ability to carry out its business in the usual and ordinary manner; and

    f.   otherwise causing damage to Twin-Med's property and/or business operations during construction.

20.    As a direct and proximate result of one or more of the preceding negligent acts and/or omissions on the part of defendants, a substantial portion of Twin-Med's inventory was contaminated and thereafter unusable, and Twin-Med was unable to conduct its business in the ordinary and usual manner. These actions caused property damage and resulted in lost inventory, lost sales, lost profits, loss of goodwill, and other damage to Twin-Med.

## COUNT II
### (Breach of Lease)

21.    Twin-Med incorporates paragraphs 1 – 16 as if fully set forth herein.

22.    Pursuant to paragraph 22(E) of the Lease, "[a]ll work performed by either Lessor or Lessee shall be performed in a first class and workmanlike manner."

23.    Defendants breached this portion of the Lease by performing work in the Building that was not done in a first class or workmanlike manner and that resulted in damage to Twin-Med's inventory. Defendants failed to perform the work in a first class and workmanlike manner for one or more of the following reasons:

    a.   failing to notify Twin-Med of construction work to be performed in the Building;

4

b.  failing to allow Twin-Med the opportunity to protect its inventory from harm and/or contamination;

c.  failing to take appropriate measures to protect the inventory present at the Building;

d.  performing work that resulted in large amounts of dirt and dust to contaminate Twin-Med's inventory storage area without adequate protection or safeguards;

e.  performing the work in such a manner as to interfere with Twin-Med's ability to carry out its business in the usual and ordinary manner; and

f.  otherwise failing to perform the work in a first class and workmanlike manner.

24.    Twin-Med has performed all of its duties and obligations under the terms of the Lease and is not in default under the covenants and agreements of the Lease.

25.    As a direct and proximate result of one or more of the preceding acts and/or omissions on the part of defendants, a substantial portion of Twin-Med's inventory was contaminated and thereafter unusable, and Twin-Med was unable to conduct its business in the ordinary and usual manner. These actions resulted in lost sales, lost profits, property damage, loss of goodwill, and other pecuniary harm to Twin-Med.

**COUNT III**
**(Breach of Covenant of Quiet Enjoyment)**

26.    Twin-Med incorporates paragraphs 1 – 16 as if set forth fully herein.

27.    A covenant of quiet enjoyment is implied in the Lease.

28.    Defendants breached this covenant, due to their:

a.  failing to allow Twin-Med the opportunity to protect its inventory from harm and/or contamination;

5

b.  failing to take appropriate measures to protect the inventory present at the Building;

c.  performing work that resulted in large amounts of dirt and dust to contaminate Twin-Med's inventory storage area without adequate protection or safeguards;

d.  performing the work in such a manner as to interfere with Twin-Med's ability to carry out its business in the usual and ordinary manner; and

e.  otherwise interfering with Twin-Med's quiet enjoyment of the property.

29.    As a direct and proximate result of one or more of the preceding acts and/or omissions on the part of defendants, a substantial portion of Twin-Med's inventory was contaminated and thereafter unusable, and Twin-Med was unable to conduct its business in the ordinary and usual manner. These actions resulted in lost sales, lost profits, property damage, loss of goodwill, and other pecuniary harm to Twin-Med.

30.    Plaintiff has been further damaged by defendants' breach of the covenant of quiet enjoyment in that the rental value of the property was rendered significantly less than the rent plaintiff was obligated to pay during the time of the breach.

### Prayer for Relief

WHEREFORE, Plaintiff Twin-Med LLC seeks that the Court enter a judgment in its favor and against Defendants 7315 N. St. Louis, LLC and Greystone Associates, Inc. for damages consisting of, but not limited to, lost profits, lost sales, loss of inventory, loss of goodwill and excess rent payments. Plaintiff's damages are in excess of $500,000.00, as will be proven and determined at trial. Plaintiff also requests such further and other relief as the Court deems just and proper.

## Jury Demand

Twin-Med demands a trial by jury.

TWIN-MED LLC

By _____

One of the Attorneys for Plaintiff

Matthew S. Miller
Cassandra M. Crane
**Much Shelist Denenberg**
  **Ament & Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000
Firm ID 80580

7

EXHIBIT A

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# INDUSTRIAL BUILDING LEASE

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT |
|---|---|---|---|
| | BEGINNING | ENDING | |
| October 21, 2003 | Per rider | Per rider | Per rider |

Location of Premises:

7315 St. Louis , Unit 5, Skokie, IL

Purpose:

Warehouse, distribution and related offices.

| | LESSEE | | LESSOR |
|---|---|---|---|
| NAME | TWIN-MED, INC. | NAME AND BUSINESS | GREYSTONE ASSOCIATES, INC AS AGENT FOR LESSOR |
| ADDRESS | 4646 Hampton St. Vernon Ca. 90058 | ADDRESS | 910 Skokie Blvd, Suite 210 Northbrook, IL 60062 |

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

**RENT**

1. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

**CONDITION AND UPKEEP OF PREMISES**

2. Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by Lessor, or his agent, prior to or at the execution of this lease that are not herein expressed; Lessee will keep the Premises including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken, and will replace all damaged plumbing fixtures with others of equal quality, and will keep the Premises, including adjoining alleys, in a clean and healthful condition according to the applicable municipal ordinances and the direction of the proper public officers during the term of this lease at Lessee's expense, and will without injury to the roof, remove all snow and ice from the same when necessary, and will remove the snow and ice from the sidewalk abutting the Premises; and upon the termination of this lease, in any way, will yield up the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will deliver the keys therefor at the place of payment of said rent.

**LESSEE NOT TO MISUSE; SUBLET; ASSIGNMENT**

3. Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that herein before specified, and will not load floors with machinery or goods beyond the floor load rating prescribed by applicable municipal ordinances, and will not allow the Premises to be occupied in whole, or in part, by any other person, and will not sublet the same or any part thereof, nor assign this lease without in each case the written consent of the Lessor first had, *which consent shall not be unreasonably withheld*, and Lessee will not permit any transfer by operation of law of the interest in the Premises acquired through this lease, and will not permit the Premises to be used for any unlawful purpose, or for any purpose that will injure the reputation of the building or increase the fire hazard of the building, or disturb the tenants or the neighborhood, and will not permit the same to remain vacant or unoccupied for more than ten consecutive days; and will not allow any signs, cards or placards to be posted, or placed thereon, nor permit any alteration of or addition to any part of the Premises, except by written consent of Lessor; all alterations and additions to the Premises shall remain for the benefit of Lessor unless otherwise provided in the consent aforesaid.

**MECHANIC'S LIEN**

4. Lessee will not permit any mechanic's lien or liens to be placed upon the Premises or any building or improvement thereon during the term hereof, and in case of the filing of such lien Lessee will promptly pay same. If default in payment thereof shall continue for thirty (30) days after written notice thereof from Lessor to the Lessee, the Lessor shall have the right and privilege at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessee immediately on rendition of bill therefor.

**INDEMNITY FOR ACCIDENTS**

5. Lessee covenants and agrees that he will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damages or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about the Premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof.

**NON-LIABILITY OF LESSOR**

6. Except as provided by Illinois statute, Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage or the bursting, leaking or running of any pipes, tank or plumbing fixtures, in, above, upon or about Premises or any building or improvement thereon nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damage arising from acts or neglect of any owners or occupants of adjacent or contiguous property.

**WATER, GAS AND ELECTRIC CHARGE**

7. Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as above specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

**PAGE I**

**KEEP PREMISES IN REPAIR**

8. Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith, and the Lessee at his own expense will keep all improvements in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable thereto, as well as lawful requirements of all competent authorities in that behalf. Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair. If Lessee does not make repairs as required hereunder promptly and adequately, Lessor may but need not make such repairs and pay the costs thereof, and such costs shall be so much additional rent immediately due from and payable by Lessee to Lessor.

**ACCESS TO PREMISES**

9. Lessee will allow Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any needful repairs, or alterations thereof which Lessor may see fit to make and will allow to have placed upon the Premises at all times notice of "For Sale" and "To Rent", and will not interfere with the same.

**ABANDON-MENT RELETTING**

10. If Lessee shall abandon or vacate the Premises, or if Lessee's right to occupy the Premises be terminated by Lessor by reason of Lessee's breach of any of the covenants herein, the same may be re-let by Lessor for such rent and upon such terms as Lessor may deem fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized monthly, after paying the expenses of such re-letting and collecting to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency monthly during the remaining period of this lease.

**HOLDING OVER**

11. Lessee will, at the termination of this lease by lapse of time or otherwise, yield up immediate possession to Lessor, and failing so to do, will pay as liquidated damages, for the whole time such possession is withheld, the sum of ☓—☓—☓————— Dollars ($ ☓——— ☓—) per day; but the provisions of this clause shall not be held as a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to forfeit this lease and the term hereby granted for the period still unexpired, for a breach of any of the covenants herein.

**EXTRA FIRE HAZARD**

12. There shall not be allowed, kept, or used on the Premises any inflammable or explosive liquids or materials save such as may be necessary for use in the business of the Lessee, and in such case, any such substances shall be delivered and stored in amount, and used, in accordance with the rules of the applicable Board of Underwriters and statutes and ordinances now or hereafter in force.

**DEFAULT BY LESSEE**

13. If default be made in the payment of the above rent, or any part thereof, or in any of the covenants herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee or any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain for rent due, and shall have a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

**NO RENT DEDUCTION OR SET OFF**

14. Lessee's covenant to pay rent is and shall be independent of each and every other covenant of this lease. Lessee agrees that any claim by Lessee against Lessor shall be from rent nor set off against any claim for rent in any action.

**RENT AFTER NOTICE OR SUIT**

15. It is further agreed, by the parties hereto, that after the service of notice, or the commencement of a suit or after final judgment for possession of the Premises, Lessor may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit, or said judgment.

**PAYMENT OF COSTS**

16. Lessee will pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

**RIGHTS CUMULATIVE**

17. The rights and remedies of Lessor under this lease are cumulative. The exercise or use of any one or more thereof shall not bar Lessor from exercise or use of any other right or remedy provided herein or otherwise provided by law, nor shall exercise nor use of any right or remedy by Lessor waive any other right or remedy.

**FIRE AND CASUALTY**

18. In case the Premises shall be rendered untenantable during the term of this lease by fire or other casualty, Lessor at his option may terminate the lease or repair the Premises within 60 days thereafter. If Lessor elects to repair, this lease shall remain in effect provided such repairs are completed within said time. If Lessor shall not have repaired the Premises within said time, then at the end of such time the term hereby created shall terminate. If this lease is terminated by reason of fire or casualty as herein specified, rent shall be apportioned and paid to the day of such fire or other casualty.

**SUBORDINATION**

19. This lease is subordinate to all mortgages which may now or hereafter affect the Premises.

**PLURALS; SUCCESSORS**

20. The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" and "Lessees" in case more than one person constitutes either party to this lease; and all the covenants and agreements contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and may be exercised by his or their attorney or agent.

**SEVERABILITY**

21. Wherever possible each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this lease shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease.

see attached Rider

If this instrument is executed by a corporation, such execution has been authorized by a duly adopted resolution of the Board of Directors of such corporation.

This lease consists of _-2-_____ pages numbered I to _-2-_____, including a rider consisting of _-3-_____ pages, identified by Lessor and Lessee.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the Date of Lease stated above.

LESSEE: Twin Med, Inc.                                  LESSOR:

By: _____   Title: _____   (SEAL)

_____          _____ (SEAL)

                                          By: _____

                                                                                  (SEAL)

**ASSIGNMENT BY LESSOR**

On this _____, _____, for value received, Lessor hereby transfers, assigns and sets over to

_____ all right, title and interest in and to the above

Lease and the rent thereby reserved, except rent due and payable prior to _____, 19__

                                          _____ (SEAL)

                                          _____ (SEAL)

On this _____, 19__

**GUARANTEE**

consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by Lessee, Lessee's heirs, executors, administrators, successors or assigns of all covenants and agreements of the above Lease.

                                          _____ (SEAL)

                                          _____ (SEAL)

RIDER ATTACHED TO THE LEASE DATED OCTOBER 21, 2003 BETWEEN GREYSTONE ASSOCIATES, INC, AS AGENT FOR LESSOR AND TWIN-MED, INC., AS LESSEE FOR SPACE KNOWN AS 7315 ST. LOUIS, UNIT 5, SKOKIE, ILLINOIS:

## 22. CONDITION AND MAINTENANCE OF PREMISES:

**A. LESSORS RESPONSIBILITY:**
Lessor shall deliver the premises to Lessee in "AS IS WHERE-IS" condition with no representations or warranties whatsoever as to its physical condition, its compliance with local codes or its fitness for a particular purpose or use. Lessee expressly assumes all obligations with respect to the above. In addition, Lessee shall be responsible for obtaining all necessary occupancy permits and business licenses as the same may be required by any governmental authority.

In addition, it is expressly understood by Lessee that any and all changes or improvements to the interior shall be Lessee's sole responsibility.

Notwithstanding the above, Lessor shall make any necessary repairs to the roof, the parking lot, and the structural components of the building and shall keep same in good condition throughout the lease term.

**B. IMPROVEMENTS PRIOR TO DELIVERY:**
Prior to delivery of possession, Lessor shall make the following improvements in the space (as shown on the attached floor plan):

1. Offices reasonably satisfactory to Lessee, per rough floor plan and specifications submitted by Lessee and attached hereto.
2. 1 private drive in door
3. Deliver and broom-swept condition
4. Enclose doc area to provide protection for Lessee's loading and goods

Any changes to the suite from its current condition which shall be required shall be performed by Lessee at Lessee's expense. Lessee will be responsible for its own phone system and all equipment and furniture installation and shall obtain any necessary permits.

LESSEE WILL BE RESPONSIBLE TO PROVIDE LESSOR WITH PLANS AND SPECIFICATIONS AND FOR A LIST OF ALL LICENSED AND BONDED CONTRACTORS WHICH SHALL PERFORM LESSEE'S WORK.

**C. LESSEE'S RESPONSIBILITY:**
In addition to section 2 of the Lease and in addition to the above, throughout the term of the lease, Lessee shall be responsible for the continued maintenance and replacement of the interior of the Premises including but not limited to the following systems, equipment, and fixtures: all portions of the office improvements, all electrical, lighting, plumbing, sprinkler, and mechanical systems servicing the Premises.

**D. HEATING AND AIR CONDITIONING:**
During the term of this lease, lessee shall be responsible for maintaining, repairing, and or replacing the heating and air conditioning equipment and keeping the system in proper working order.

It is expressly understood by Lessee that any and all changes or improvements to the heating and air conditioning units, including any additional duct work, increased BTU's or tonnage, shall be Lessee's sole responsibility.

Notwithstanding the above, Lessor will have a reputable contractor inspect the existing heating and air conditioning units and will provide the units to Lessee in good working order, with any applicable warranties.

**E. PERFORMANCE:**
All work performed by either Lessor or Lessee shall be performed in a first class and workmanlike manner.

**F. UTILITIES:**
Tenant responsible to pay all utilities for the leased premises. In the event any such utility is not separately metered to the leased premises, Tenant to pay its pro-rata share of said utility as provided by Landlord.

## 23. LEASE TERM AND RENTAL

**A. LEASE TERM AND RENTAL COMMENCEMENT:**
This Lease shall be for a term commencing November 1, 2003 and shall expire November 30, 2006.

**B. MINIMUM MONTHLY RENTAL:** During the lease term, Minimum Monthly rental shall be as follows:

From November 1, 2003 through November 30, 2003 the sum of $0.00
From December 1, 2003 through November 30, 2004 the sum of $7,721.00 per month
From December 1, 2004 through November 30, 2005 the sum of $7,953.00 per month
From December 1, 2005 through November 30, 2006 the sum of $8,192.00 per month

These figures are subject to adjustment if the square footage of the premises is determined to be less than 14,255. See paragraph 34.M. The rental rate is $6.50 per square foot.

**C.    RENEWAL OPTION:**
Provided the Tenant is not in violation of the lease in any manner, Tenant is granted the one time option to renew the lease at the rates below, all other terms in the lease shall remain in effect. Tenant to provide Landlord ninety (90) days prior written notice of its desire to renew lease.

From December 1, 2006 through November 30, 2007 the sum of $7,721.00 per month
From December 1, 2007 through November 30, 2008 the sum of $7,953.00 per month
From December 1, 2008 through November 30, 2009 the sum of $8,192.00 per month

These figures are subject to adjustment if the square footage of the premises is determined to be less than 14,255. See paragraph 34.M.  The rental rate is $6.50 per square foot.

**D.    TERMINATION OPTION:**
Tenant may have a one time option to terminate this lease after 2 years by providing written notice by the 1st day the 21st month of the lease to Landlord.
In the event Tenant elects to terminate lease subject to this provision Tenant to pay landlord $7,721.00 which is the amount of the 1 month rental abatement.

24.    deleted

25.    REAL ESTATE TAXES: In addition to the minimum monthly rental and all other charges due under this Lease, Lessee shall pay to lessor, in monthly installments, its proportionate share of the General Real Estate Taxes and Special Assessments and lessor's costs incurred in contesting same, which shall be levied on the Building and the Improvements during the lease term, in excess of those costs incurred or paid by Lessor during the 2002 calendar year.  Lessor shall pay such taxes in monthly installments in amounts estimated by lessor from time to time, and shall pay any increases in lump sum payments to lessor within 10 days of receipt of Lessor's billing showing the amount of Lessee's obligation. All charges which may become due under this paragraph shall be considered additional rental. Lessee's share is 25%, representing approximately $ _____

26.    COMMON AREA AND BUILDING MAINTENANCE COSTS: In addition to the minimum monthly rental and all other charges due under this lease, lessee shall pay to lessor in monthly installments, its proportionate share of the costs incurred by lessor in managing, maintaining, repairing, and cleaning the building exterior and its components, parking lot and drives and property surrounding the building, in excess of those costs incurred by Lessor during the 2003 calendar year.  Such costs shall include but not be limited to; trash removal, utilities, janitorial, plumbing and electrical, landscaping, snow plowing, seasonal decor, painting, supplies, signage, and administrative costs.  Lessee shall pay such costs in monthly installments in amounts estimated by lessor from time to time, and shall pay any increases in lump sum payments to lessor within 10 days of receipt of Lessor's billing showing the amount of Lessee's obligation. All charges which may become due under this paragraph shall be considered additional rental. Lessee's share is 25% and Lessor shall provide reasonably satisfactory back up information supporting any invoice to Lessee.

27.    INSURANCE OF BUILDING AND LOTS: Lessor agrees to purchase and keep in force and effect during the term hereof, comprehensive general liability insurance and insurance on the building against fire or other casualty (except earthquake) which is available at commercially reasonable rates and in amounts customarily carried by owners of similar buildings in the Chicagoland area.

28.    LESSEE'S CONSTRUCTION:  Prior to commencement of any work or improvements in the Premises, Lessee shall provide to Lessor a copy of Lessee's proposed improvements including a floor plan and specifications, a list of contractors and subcontractors that will be doing the work, and a copy of an insurance certificate applicable to the work.  Lessee shall obtain all necessary permits and approvals that are necessary to perform the work.

29.    SUMS DUE ON EXECUTION: Upon execution of this lease, Lessee shall deliver the sum of $7,721.00 as the Security Deposit.  In addition, Lessee shall deliver the sum of $7,721.00 which shall be applied to first month's rental.

30.    SECURITY DEPOSIT: Lessee shall deposit the sum of $7,721.00 as security for the faithful performance of Lessee's obligations of this lease.  At the expiration of the term, provided Lessee has not defaulted or is not then in default, Lessor shall return the deposit to Lessee.  If rent is determined to be less than this amount, Lessor shall refund Lessee any difference.  See paragraph 23.C.

31.    BROKERAGE: Lessee represents will indemnify Lessor from claims of third party Brokers.  Lessor represents that they have hired D2 Realty Services, Inc. as their sole and exclusive Broker.  Lessor shall be solely responsible for payment of the Brokerage Commission to the Broker(s).

32.    Deleted

33.    INSURANCE:

A.    During the term of this lease, Lessee shall maintain commercial general liability insurance covering Lessee as the insured party, and naming Lessor, its mortgagee, and Lessee's agents as additional insured, against claims for bodily injury and death and property damage occurring in or about the premises, with limits of not less than One Million Dollars ($1,000,000.00) for each injury or death to a person and One Million Dollars ($1,000,000.00) for each occurrence, and in case of property damage, not less than Five Hundred Thousand Dollars ($500,000.00) for any one occurrence.

B.    Lessee shall also maintain, during the term, worker compensation insurance as required by statute, and primary non-contributory "all risk" property damage insurance covering Lessee's personal property, business records, fixtures and equipment, for damage or other loss caused by fire or other casualty including but not limited to vandalism, malicious mischief, theft, water damage of any type including sprinkler leakage, bursting or stopped pipes, explosion, business interruption and other insurable risks in amounts not less than full replacement value of property and full insurable value (subject to reasonable amounts) of such other interests of Lessee.

All such policies of Insurance shall provide that Lessor shall receive not less than 30 days notice prior to cancellation of the policy.

34.    GENERAL:

A.    Rubbish Removal Charges: Lessee shall pay for its own trash and refuse removal.  Lessee shall contract with a reputable waste hauler for said services.

B.    Notices: Notices which may be required may be given to Lessor or to Lessee by certified mail return receipt requested or by hand delivery.  In addition, notices to Lessee from Lessor may be given by posting the notice on the Premises and or by U.S. Mail.

C.    Late Fees: Each and every installment of rental which is not received by Lessor by the fifth day of the month in which same shall be due shall be considered "late" and Lessee shall be liable for a 5% (five percent) per month late fee in addition to interest at 18% per annum or the highest rate allowed by law.

D.    Signage: Lessee shall not affix any sign to the exterior of the building without Lessor's prior written consent. As a condition to such consent, all signs shall conform to lessor's signage and design criteria. If requested by Lessee, Lessor shall affix Lessee's business name to the awning at Lessee's expense.  Lessor approves Lessee's sign plan, attached hereto.

E.    Truck and trailer parking: No overnight parking of trucks, trailers, cars or other vehicles shall be allowed, and Lessor may take such steps as Lessor, in its sole discretion, deems necessary for the enforcement of this provision.    Notwithstanding this, Lessor acknowledges that Lessee may require occasional truck parking and consents to such overnight parking.

F.    Rules and Regulations: Lessee shall comply with such other reasonable rules and regulations as Lessor may impose for the benefit of the tenants, customers, and invitees of 1500 Algonquin Center Office Industrial Complex.

H.    Holdover rental: Section 11 of the Lease shall be modified such that Holdover rental shall be 150% of the then current rental including all pass through charges. In addition, in the event Lessee shall holdover, Lessor may upon written notice to Lessee, declare that the lease shall continue for one year at 150% of the then Rental.

I.    Conflict: If there is a conflict between the terms of the Lease and this Rider, the terms of this Rider shall be deemed to control.

J.    Use: Lessee shall use the premises for the purposes of warehouse, storage and general office purposes and for no other purpose without Lessor's written consent.

K.    Purchase: This lease is subject to Greystone Associates, Inc. completing the purchase of the property.

L.    Fire and Casualty:  Lease section 18 remains in effect with the following adjustment. In case a part of premises shall be rendered untenantable or unusable by Lessee, including roof leaks, rent shall abate proportionately during repairs to unusable portion of premises.

M.    Premises: Lessor believes the premises are approximately 14,255 square feet. Exact square footage shall be determined by measurement and shall include Tenant's proportionate share of common areas.  The measurement shall be verified by Landlord's architect.

Lessor:
Greystone Associates, Inc, Agent


By: _____        Title: _____

Lessee:
TWIN-MED, INC.

By: _____        Title: _____

LEASE DATED OCTOBER 21, 2003 BY AND BETWEEN GREYSTONE ASSOCIATES, INC, AS AGENT FOR LESSOR AND GNS EXPRESS, INC., AS LESSEE FOR SPACE KNOWN AS UNIT 1522 EAST ALGONQUIN ROAD, ARLINGTON HEIGHTS, IL. CONSISTING OF THE FOLLOWING:

BOILERPLATE INDUSTRIAL LEASE FORM NO. 1201 ITEMS 1-21
RIDER TO LEASE ITEMS 22-34
BUILDING SITE PLAN
LEASE GUARANTY

# EXHIBIT B



**GREYSTONE ASSOCIATES, INC.**
7247 St. Louis Avenue
Skokie, IL 60076

| 847-982-0340 | Commercial Real Estate | 847-982-0160 |

November 20, 2006                        via fax and US mail

Keith Abrahams
Chief Financial Officer
Twin Med LLC
11333 Greenstone Avenue
Santa Fe Springs, CA 90670

Re: Lease dated October 21, 2003 for the space commonly known as 7305 St. Louis Ave.
Skokie, Ill., as amended

Dear Mr. Abrahams:

As per your request, ownership is amenable to extending the above mentioned lease for a
period of one year on the following terms and conditions:

Base Rental: the sum of $9,215.00 per month beginning December 1, 2006 through
November 30, 2007

Real Estate Taxes: currently estimated at $304.09 per month and to be adjusted as per the
lease agreement.

Lease Expiration: the lease will expire November 30, 2007. All language regarding
Options or extensions shall be null and void.

Utilities, Maintenance, etc: All other charges will be billed in accordance with the Lease
Agreement.

If you in agreement with the above, please sign and return an original of this letter to the
undersigned no later than the end of business of November 24, 2006. Your attention to
the above is appreciated:

Sincerely,
7315 St. Louis, LLC / Greystone Holdings LLC

Baruch Schur, its manager
Cc: Harley Kahn, Joline Hoffman, Simi Mandlebaum
Winword.forms.7315.Twin med extension 11.06

11/24/06

# EXHIBIT C

# FIRST LEASE AMENDMENT

This lease amendment is entered into this 11th of December, 2007 by and between Greystone Associates, Inc.. as Managing Agent for 7315 N. St. Louis, LLC, an Illinois Limited Liability Company, as Lessor, and Twin-Med Inc.. as Lessee:

Whereas Lessor and Lessee previously entered into a lease dated October 21, 2003, for the Premises commonly known as 7305 St. Louis, Skokie, Illinois, consisting of approximately 14,744 square feet, (the Lease), and as amended and extended by letter agreement dated November 20, 2006 and,

Whereas said Lease and extension expired November 30, 2007 and Lessee desires to extend the Lease for an additional two (2) month period ending January 31, 2008;

Now therefore for the mutual covenants and agreements of the Parties, and for other valuable consideration, the Parties agree as follows:

1. **TERM:**  Article 23 (A) of the Lease shall be amended to reflect an Extended Term of two (2) months commencing December 1, 2007 and expiring January 31, 2008 (the "Extended Term").
2. **MINIMUM RENTAL:** Article 23 (B) of the Lease shall be amended to reflect a Minimum Rental payable by Lessee of $9,804.57 per month during the Extended Term.  Lessee shall pay January, 2008 Minimum Rental payment concurrent with Lessee's execution of this document but not later than December 14, 2007.
3. **HOLDOVER:**  Article 31 (G) of the Lease shall be amended to provide that if Lessee holds over in the Premises past the expiration of the Extended Term, January 31, 2008, Lessee shall be deemed a month to month tenant and shall pay a Minimum Rental of $29, 413.71 per month during such month to month tenancy.
4. **TERMINATION FEE:** Lessee shall pay to Lessor, concurrent with Lessee's execution of this document but not later than December 14, 2007, the sum of $49,022.85 as a fee for terminating this Lease.
5. **OTHER CHARGES:**  Lessee shall pay all other charges such as its proportionate share of Real Estate Taxes, utilities and common area maintenance to Lessor within five (5) business days of being billed by Lessor.
6. **CONFLICT OF TERMS:**  Except as expressly amended herein, all terms and conditions in the Lease shall remain unchanged and in full force and effect, and shall not be otherwise changed, altered or amended unless further reduced to writing and signed by both Lessor and Lessee.  In the event of any conflict between the terms and conditions of the Lease and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall control.


Lessor: 7315 St. Louis LLC
    Greystone Associates, Inc.

Lessee:  Twin-Med Inc.

By: _____ , its PRESIDENT
    Baruch Schur

By: Vusa Mabhena , its VP of Operation

# EXHIBIT D

To: Greystone Associates, Inc.
7247 St. Louis Avenue
Skokie, Il. 60076

Please be advised that TwinMed, LLC will be vacating the space commonly known as
8111 St. Louis Avenue Unit 4C in 30 days from today, January 21st, 2008.

TwinMed will also be exercising our option to continue occupying the space known as
7305 St. Louis Avenue through the month of February.

Please consider this written notice as per our Month to Month Tenancy Agreement.

Simi Mandelbaum,
TwinMed, LLC