IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TWIN-MED LLC, ) | |
| ) | |
| Plaintiff, ) | Case No.  08 CV 3377 |
| ) | |
| v. ) | Judge James B. Zagel |
| ) | |
| 7315 N. ST. LOUIS, LLC and ) | Magistrate Judge Arlander Keys |
| GREYSTONE ASSOCIATES, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant, 7315 N. ST. LOUIS, LLC ("St. Louis LLC"), by and through its attorneys, Levenfeld Pearlstein, LLC, for its Answer to the Complaint filed by Plaintiff TWIN-MED LLC, ("Plaintiff"), in the above-captioned matter, states as follows:

1. Plaintiff, Twin-Med LLC ("Twin-Med") is a Delaware Limited Liability Company, and it specializes in the distribution of medical and nursing supplies.

**ANSWER:** St. Louis LLC admits that Plaintiff is a Delaware Limited Liability Company. St. Louis LLC denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 1 of the Complaint.

2. Defendant, 7315 N. St. Louis, LLC ("St Louis LLC") is an Illinois limited liability company.

**ANSWER:** St. Louis LLC admits the allegations in Paragraph 2.

3. Defendant, Greystone Associates, Inc. ("Greystone") is an Illinois corporation, and acts as managing agent for St. Louis LLC. On information and belief, Greystone and St. Louis LLC share common ownership and control.

**ANSWER:** St. Louis LLC admits that Greystone Associates, Inc. is an Illinois corporation that acts as managing agent for St. Louis LLC. St. Louis LLC denies all remaining allegations in Paragraph 3.

4.      Jurisdiction is proper in this Court because St. Louis LLC and Greystone (collectively "defendants") are residents of Illinois and/or because this cause of actions arose out of transactions that occurred in Illinois.

**ANSWER:**   St. Louis LLC admits that it and Greystone are residents of Illinois. The remaining allegations in Paragraph 4 consist of legal conclusions, to which no response is required.

5.      Venue is proper in this Court pursuant to 735 ILCS § 5/2-101, *et seq*.

**ANSWER:**   The allegations in Paragraph 5 consist of legal conclusions, to which no response is required.

6.      On October 21, 2003, Twin-Med, Inc. entered into an agreement ("Lease") with St. Louis LLC and Greystone as St. Louis LLC's agent and/or co-lessor, to lease an industrial building, consisting of a warehouse and office space, at 7305 St. Louis, Skokie, Illinois ("Building"). A copy of the Lease is attached as Exhibit A. Twin-Med, Inc. subsequently assigned its interests and rights in the Lease to Twin-Med LLC.

**ANSWER:**   St. Louis LLC admits that on October 21, 2003, it entered into a lease with Twin-Med, Inc. (the "Lease"). St. Louis LLC admits that Greystone signed the Lease as "agent for lessor" (St. Louis LLC), as set forth in the Lease. St. Louis LLC further admits that the Lease was for the premises located at 7315 St. Louis, Unit 5, Skokie Illinois (the "Property"). St. Louis LLC also admits that Twin-Med, Inc. assigned its interests and rights in the Lease to Twin-Med LLC. St. Louis LLC denies that the document attached to the Complaint as Exhibit A is a true and correct copy of the Lease. St. Louis LLC denies all remaining allegations in Paragraph 6.

7.      The Lease was extended from time to time, and Twin-Med remained a tenant at the Building, and the Lease remained in full force and effect at all times relevant hereto.

**ANSWER:**   St. Louis LLC admits that by letter agreement dated November 20, 2006, the Lease was extended for one year through November 30, 2007. St. Louis LLC further admits that on December 11, 2007, Twin Med. Inc. and St. Louis LLC entered into an amendment to the Lease, the "First Lease Amendment," that extended the Lease for an additional two month period

ending January 31, 2008. The remaining allegations in Paragraph 7 consist of legal conclusions, to which no response is required.

8. During its tenancy, Twin-Med stored various medical and nursing supplies in the warehouse of the Building. A substantial portion of Twin-Med's inventory consisted of supplies for acute care hospitals. Its inventory required a sterile-like environment to eliminate the risk of contamination.

**ANSWER:** St. Louis LLC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8, and therefore denies all such allegations.

9. Beginning on or around February 11, 2008 and for approximately one week thereafter, defendants performed construction in the warehouse of the Building.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 9.

10. Twin-Med was not notified of the work to be performed in the warehouse, and was not given an opportunity to take measures to protect its inventory from any resulting damage from the construction.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 10.

11. Defendants did not take any precautions to protect Twin-Med's inventory during the work being done by defendants.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 11.

12. The work performed by defendants included, but was not limited to, the demolition of a cement wall in the Building's warehouse. This caused dirt and dust to cover the warehouse.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 12.

13. Due to defendants' construction activities, a substantial amount of Twin-Med's inventory was contaminated by dust and dirt, and was thereafter unusable. Twin-Med was unable to sell the contaminated inventory.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 13.

14. During the construction, a large portion of the warehouse was inaccessible to Twin-Med due to construction equipment obstructing aisle ways. Twin-Med was unable to fill customer orders as a result of these obstructions.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 14.

15.  Due to piles of bricks from the construction and a garbage dumpster, the loading dock of the warehouse also was substantially limited in its use. Twin-Med was unable to ship customer orders as a result of this obstruction.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 15.

16.  During and following defendants' construction, Twin-Med suffered a loss of inventory, loss of sales and loss of goodwill of its customers, as it was unable to use the contaminated inventory to fulfill customer orders, and it was also unable to conduct its affairs in the usual and ordinary manner given the obstructions caused by defendants' work.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 16.

## COUNT I
## (NEGLIGENCE)

17.  Twin-Med incorporates paragraphs 1-16 as if fully set forth herein.

ANSWER: St. Louis LLC repeats and incorporates is answers to paragraphs 1-16 above to this paragraph 17.

18.  At all times relevant herein, defendants had a duty to exercise the requisite degree of care to perform work in the Building in a reasonable and workmanlike manner.

**ANSWER:** The allegations in Paragraph 18 consist of legal conclusions, to which no response

is required.

19.  Notwithstanding the duty of defendants, they were guilty of one or more of the following careless and negligent acts and/or omissions:

   a.  failing to notify Twin-Med of construction work to be performed in the Building;
   b.  failing to allow Twin-Med the opportunity to protect its inventory from harm and/or contamination;
   c.  failing to take appropriate measures to protect the inventory present at the Building;
   d.  performing work that resulted in large amounts of dirt and dust to contaminate Twin-Med's inventory storage area without adequate protection or safeguards;
   e.  performing the work in such a manner as to interfere with Twin-Med's ability to carry out its business in the usual and ordinary manner; and
   f.  otherwise causing damage to Twin-Med's property and/or business operations during construction.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 19.

20.  As a direct and proximate result of one or more of the preceding negligent acts and/or omissions on the part of the defendants, a substantial portion of Twin-Med's inventory was contaminated and thereafter unusable, and Twin-Med was unable to conduct its business in

4

the ordinary and usual manner. These actions caused property damage and resulted in lost inventory, lost sales, lost profits, loss of goodwill, and other damage to Twin-Med.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 20.

## COUNT II
## (BREACH OF LEASE)

21. Twin-Med incorporates paragraphs 1-16 as if fully set forth herein.

ANSWER: St. Louis LLC repeats and incorporates is answers to paragraphs 1-16 above to this paragraph 21.

22. Pursuant to paragraph 22(E.) of the Lease, "[a]ll work performed by either Lessor or Lessee shall be performed in a first class and workmanlike manner."

**ANSWER:** With respect to the allegations in Paragraph 22, St. Louis LLC respectfully refers the Court to the terms of the Lease, the terms of which speak for themselves.

23. Defendants breached this portion of the Lease by performing work in the Building that was not done in a first class or workmanlike manner and that resulted in damage to Twin-Med's inventory. Defendants failed to perform the work in a first class and workmanlike manner for one or more of the following reasons:

    a. failing to notify Twin-Med of construction work to be performed in the Building;
    b. failing to allow Twin-Med the opportunity to protect its inventory from harm and/or contamination;
    c. failing to take appropriate measures to protect the inventory present at the Building;
    d. performing work that resulted in large amounts of dirt and dust to contaminate Twin-Med's inventory storage area without adequate protection or safeguards;
    e. performing the work in such a manner as to interfere with Twin-Med's ability to carry out its business in the usual and ordinary manner; and
    f. otherwise failing to perform the work in a first class and workmanlike manner.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 23.

24. Twin-Med has performed all of its duties and obligations under the terms of the Lease and is not in default under the covenants and agreements of the Lease.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 24.

5

25. As a direct and proximate result of one or more of the preceding acts and/or omissions on the part of the defendants, a substantial portion of Twin-Med's inventory was contaminated and thereafter unusable, and Twin-Med was unable to conduct its business in the ordinary and usual manner. These actions resulted in lost sales, lost profits, property damage, loss of goodwill, and other pecuniary harm to Twin-Med.

**ANSWER:** St. Louis LLC denies the allegations contained in Paragraph 25.

## COUNT III
## (BREACH OF COVENANT OF QUIET ENJOYMENT)

*Count III is the subject of a motion to dismiss currently pending before the Court.*

### FIRST AFFIRMATIVE DEFENSE

1. At all relevant times, Plaintiff had a legal duty to mitigate its damages.

2. To the extent that Plaintiff has suffered the damages claimed, including lost profits or sales or customers such loss is solely attributable to, *inter alia*: (a) Plaintiff's failure to preserve, safeguard and protect its business assets at a point in time that it was aware of construction activities in its space; and (b) Plaintiff's failure to adequately advise defendants of the nature of Plaintiff's business assets and or how to preserve and protect such assets.

3. To the extent Plaintiff is awarded any damages in this case – despite defendants' contention that this Court should enter Judgment in their favor and against Plaintiff as to all Counts in the Complaint – that award should be reduced to account for Plaintiff's failure to mitigate its damages, and to account for Plaintiff's contributory negligence.

### SECOND AFFIRMATIVE DEFENSE
### ESTOPPEL

1. By choosing to allow and consent to defendants access to the Property, by allowing defendants to undertake construction activities on the Property, and in failing to advise defendants at the time of any of the issues or concerns or harms alleged in the Complaint, the

doctrine of "equitable estoppel" bars Plaintiff from asserting claims against defendants arising out of their activities at Plaintiff's place of business.

### THIRD AFFIRMATIVE DEFENSE
### WAIVER

1. By choosing to allow and consent to defendants' access to Plaintiff's premises, allowing defendants to undertake construction activities on the Property, and failing to advise defendants at the time of any of the issues or concerns or harms alleged in this complaint, Plaintiff's conduct constitutes an implied – yet intentional – relinquishment of its known rights against defendants.

2. Accordingly, the doctrine of "waiver" bars Plaintiff's claims against defendants in this case.

August 6, 2008

        Respectfully submitted,

        7315 N. ST. LOUIS, LLC

        By: */s/ Amy A. Pines*
            One of their Attorneys

Gary I. Blackman (ARDC #6187914)
Amy A. Pines (ARDC #6280875)
Levenfeld Pearlstein, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

# CERTIFICATE OF SERVICE

I, Amy A. Pines, an attorney, hereby certify that on August 6, 2008, I caused a copy of Defendant's Answer to Plaintiff's Complaint to be filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to the following attorneys: Matthew S. Miller and Cassandra M. Crane c/o Much Shelist Denenberg Ament & Rubenstein, 191 North Wacker Drive, Suite 1800, Chicago IL 60606.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Amy A. Pines*

　　　　　　　　　　　　　　　　　　　　　　Gary I. Blackman (ARDC #6187914)
　　　　　　　　　　　　　　　　　　　　　　Amy A. Pines (ARDC #6280875)
　　　　　　　　　　　　　　　　　　　　　　Levenfeld Pearlstein, LLC
　　　　　　　　　　　　　　　　　　　　　　2 North LaSalle Street, Suite 1300
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　　　　　(312) 346-8380
　　　　　　　　　　　　　　　　　　　　　　(312) 346-8434 (Facsimile)